UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DIVISION 1181 AMALGAMATED
TRANSIT UNION-NEW YORK EMPLOYEES
PENSION FUND and its TRUSTEES,

                       Plaintiffs,

      - against -

R AND C TRANSIT, INC.,

                      Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 16-2481 (ADS)(ARL)

**LINDSAY, Magistrate Judge:**

This matter was referred to the undersigned by District Judge Spatt for the purpose of issuing a report and recommendation on Division 1181 Amalgamated Transit Union-New York Employees Pension Fund ("Pension Fund") and Its Trustees' (collectively, "Plaintiffs") unopposed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of the motion Plaintiffs have submitted their Memorandum of Law, Local Rule 56.1 Statement and Declaration of Robert D'Ulisse, Director of the Division 118 A.T.U. – New York Employees Pension Fund, dated September 12, 2017 ("D'Ulisse Decl."). R and C Transit ("Defendant" or the "Company") has not responded to the motion. For the reasons set forth below, the undersigned respectfully recommends that Plaintiffs' motion be granted.

### BACKGROUND

The following facts are drawn from the pleadings, Plaintiffs' Local Rule 56.1 Statement ("Pl.'s 56.1 Stmt."),[1] and the papers submitted in support of the instant summary judgment motion. The facts cited are undisputed unless otherwise noted.

### A. Factual Background

Plaintiffs commenced this lawsuit on May 16, 2016, seeking to recover withdrawal liability and attendant damages owed by the Company pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, et seq. ("MPPAA"). The Division 1181 Amalgamated Transit Union-New York Employees Pension Fund ("Pension Fund") is a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of the ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), that provides retirement benefits to eligible participants. Pl.'s 56.1 Stmt. at ¶ 1. The Pension Fund is established and maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement"). *Id.* The Trustees are fiduciaries of the Pension Fund within the meaning of ERISA § 3(21), 29 U.S.C. §1002(21). *Id.* at 2.

---

[1] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment is required to submit a "Statement of Material Facts upon which it contends there 'exists a genuine issue to be tried' and . . . 'each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible. . . .'" *Spindler v. Great N. Ins. Co.*, No. CV 13-5237, 2016 WL 921646, at *4 (E.D.N.Y. Feb. 2, 2016), *report and recommendation adopted by*, No. 13-CV-5237, 2016 WL 899266 (E.D.N.Y. Mar. 9, 2016) (quoting Local Civ. R. 56.1(d) and collecting cases). Where, as here, a party opposing summary judgment fails to "properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." *Id.* (quoting Local Civ. R. 56.1(c)).

Until it withdrew from the Pension Fund on or about June 30, 2014, the Company employed employees represented for the purposes of collective bargaining by Amalgamated Transit Union Local 1181 (the "Union"). *Id.* at 9. Defendant was signatory to and bound by a collective bargaining agreement ("CBA") with the Union. *Id.* at 10. Defendant admits that it "employed employees represented for the purposes of collective bargaining by" the Union and that it "was signatory and a party to a collective bargaining agreement with" the Union. *Id.* at 11. The term of Defendant's final CBA with the Union was for the period from July 1, 2009, through December 31, 2012, but the CBA further provided that it would "continue in effect after December 31, 2012 from year to year unless terminated by lawful notice on or before December 31, 2012 or at the expiration of any subsequent lawful period by either party giving to the other party not less than sixty (60) days prior written notice of its desire to so terminate the agreement on December 31, 2012 or any subsequent year." *Id.* at 12. On or about February 7, 2014, Defendant and the Union entered into a Memorandum of Agreement which kept the CBA in effect until June 30, 2014. *Id.* at 13.

Section 14 of the CBA obligated Defendant to contribute to the Pension Fund. *Id.* at 14. Section 14(h)(1) of the CBA provides that "[t]he Trustees shall have the authority to have a public accountant audit the payroll, wage records and such other records of the Employer as the Trustees deem necessary for the purpose of determining the accuracy of contributions to the" Pension Fund. *Id.* at 16. Section 14(j) of the CBA provides that Defendant "is bound to the terms of the [Pension] Fund['s] Agreement of Trust and policies and procedures adopted by the Trustees. The [Pension] Fund's policy on delinquencies and collection shall be incorporated by reference." *Id.* at 17. Section 14(h)(2) of the CBA provides that "[d]elinquent contributions

3

owed as a result of an audit shall be charged interest at a rate of twelve percent (12%) per annum if such amounts are paid within thirty days from the date the audit is provided to the Employer," but that "[i]f such amounts are not paid within thirty days from the date the audit is provided to the Employer, delinquent contributions as a result of an audit shall be charged interest at a rate of eighteen percent (18%) per annum from the original due date to the date of payment." *Id.* at 18. Section 14(b) of the CBA states that the "Due Date" for contributions to the Pension Fund is the "the twenty fifth (25th) of the month following the month in which the work was performed . . . ." *Id.* at 19.

Article VII, Section 11 of the Trust Agreement provides that the "Trustees shall have the power to make rules establishing procedures for the collection of delinquent Contribution accounts." *Id.* at 4. Pursuant to the authority provided to them under the Trust Agreement, the Trustees adopted the Delinquency Policy. *Id.* at 5. Under Section 2(A)(2) of the Delinquency Policy, "[i]nterest will be charged on delinquent Contributions in accordance with the CBA." However, "[i]f the CBA does not so specify" an interest rate, then "contributions that are not paid on the Due Date shall accrue interest from the Due Date until the date payment is received at the rate of the Pension Fund's custodial bank's prime rate plus 2% per annum." *Id.* at 6. Section 6(1) of the Delinquency Policy also requires employers to pay liquidated damages if legal action is initiated in an amount equal to the greater of: (a) applicable interest owed for the delinquent contributions; and (b) 20% of the delinquent contributions. *Id.* at 7.

The Trust Agreement and Delinquency Policy require the Company to submit to periodic reviews of its payroll and related records by the Pension Fund's auditors to confirm that required

4

contributions have been made by the employer to the Pension Fund, which are referred to as "payroll audits." *Id.* at 8.

The Pension Fund conducted a payroll audit of the Company for the period of July 1, 2012, to June 30, 2013 (the "2013 Audit"). *Id.* at 21. The 2013 Audit determined that Defendant owed the Pension Fund $261.00 in principal contributions. *Id.* at 22. Before the 2013 Audit was finalized, the Fund's auditor provided a draft report to Defendant and invited Defendant to provide any questions or concerns that it had with the 2013 Audit findings. *Id.* at 23. Defendant never raised any disputes with the 2013 Audit. *Id.* at 24. Defendant has never paid any portion of the amounts found owed by the 2013 Audit, nor has Defendant paid any interest or liquidated damages associated with the 2013 Audit. *Id.* at 25.

The Pension Fund also conducted a payroll audit of Defendant for the period of July 1, 2013, to June 30, 2014 (the "2014 Audit"). *Id.* at 26. The 2014 Audit identified that the Company owes the Pension Fund $1,152.00 in principal contributions. *Id.* at 27. Before the 2014 Audit was finalized, the Fund's auditor provided a draft report to Defendant and invited Defendant to provide any questions or concerns that it had with the 2014 Audit findings. *Id.* at 28. Defendant never raised any disputes with the 2014 Audit. *Id.* at 29. Defendant has never paid any portion of the amounts found owed by the 2014 Audit, nor has Defendant paid any interest or liquidated damages associated with the 2014 Audit. *Id.* at 30.

The Pension Fund determined that, on or about June 30, 2014, Defendant had permanently ceased all covered operations under the Pension Fund, and thereby had effected a "complete withdrawal" from the Pension Fund, as that term is defined by ERISA § 4203, 29

5

U.S.C. § 1383. *Id.* at 31. The Pension Fund also determined that, as a result of this complete withdrawal, Defendant had incurred withdrawal liability to the Pension Fund in the amount of $173,156.00. *Id.* at 32.

By letter dated June 10, 2015 (the "Notice and Demand"), the Pension Fund notified Defendant that the it had determined that Defendant had effected a complete withdrawal, as well as the amount of Defendant's withdrawal liability. *Id.* at 33. The Notice and Demand made a demand for payment of withdrawal liability with a payment schedule issued by the Pension Fund. Specifically, the Notice and Demand informed Defendant that its withdrawal liability was payable either as a single installment of $173,156.00 or, according to the schedule contained therein, in 80 quarterly payments of $3,858.76, and that the first payment was due to the Pension Fund by August 9, 2015, with subsequent payments due quarterly thereafter. *Id.* at 34. Defendant admits receipt of the Notice and Demand. *Id.* at 35. Defendant did not make the first withdrawal liability payment by August 9, 2015. *Id.* at 36. As a result, by letter dated September 21, 2015 (the "Default Letter"), the Pension Fund's counsel notified Defendant that it was delinquent in making its first quarterly withdrawal liability payment and that it would be in default within the meaning of ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), if it did not cure the delinquency within 60 days, at which time the Pension Fund would require immediate payment of the entire amount of Defendant's withdrawal liability ($173,156.00), plus accrued interest on the total outstanding liability from the due date of the first payment that was not timely made. *Id.* at 37. The Default Letter was sent by the Pension Fund's counsel via certified mail, return receipt requested, to two different addresses. The Default Letter was received by Defendant at both addresses. *Id.* at 38. Defendant did not make first withdrawal liability

payment within 60 days of receipt of the Default Letter. *Id.* at 44. Defendant has not paid any amounts towards Defendant's withdrawal liability, the entire amount of which – $173,156.00 in principal – remains outstanding. *Id.* at 45.

In the motion for summary judgment, Plaintiffs seek to recover from Defendant amounts due for withdrawal liability, unpaid contributions and interest and liquidated damages with respect to those amounts through August 22, 2017. Pl. mem at 16-17. Plaintiffs have reserved the right to submit an application for attorneys' fees and costs, accrued interest from August 22, 2017 through the date of judgment and additional liquidated damages from August 22, 2017 through the date of judgment in the event the motion for summary judgment is granted. *Id.*

### B. Procedural History

Plaintiffs filed the complaint in this matter on May 16, 2016. ECF No. 1. Initially, Defendant failed to answer the complaint and Plaintiffs moved for default judgment. ECF No. 6. Judge Spatt entered a default on July 14, 2016. ECF No. 7. On October 10, 2016, Defendant moved to set aside the default. ECF No. 18. That motion was granted and Defendant filed its answer on May 5, 2017. ECF No. 21. Defendant filed a Third Party Complaint against the New York City Department of Education ("DOE"), seeking indemnification and contribution with respect to Plaintiffs' claims herein. ECF No. 24. The Doe moved to dismiss the Third Party Complaint on July 31, 2017. ECF No. 31. On February 8, 2018, Judge Spatt granted the Doe's motion to dismiss and dismissed the Third-Party Complaint in its entirety. ECF No. 41. Plaintiffs filed the instant motion for summary judgment on April 3, 2018. ECF No. 45. Defendant requested an extension of time to respond to the motion for summary judgment, which was granted, however, no opposition was ever filed. The Court was notified that

7

Defendant had elected not to oppose the motion by Plaintiffs on August 3, 2018. ECF No. 51. By Order dated September 26, 2018, Judge Spatt referred the motion for summary judgment to the undersigned.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); see *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); see also *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving

party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

In this case, the fact that Defendant did not respond to the motion does not mean that Plaintiffs are automatically entitled to summary judgment in its favor. Even "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion," the district court is still required to examine the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, 825 F. Supp. 2d 384, 395 (E.D.N.Y. 2011)(citing *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004)). However, one way that the moving party can meet its burden is to show "through the verified statements of fact contained in its Rule 56.1 Statement and the evidence in the record," that there is an absence of a genuine issue for trial. *Id.* With these standards in mind, the Court turns to Plaintiffs' arguments in favor of summary judgment.

### B. Defendant Is Subject to Withdrawal Liability

9

ERISA requires every employer who enters into a collective bargaining agreement to make contributions "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Under the amendments set forth in the MPPAA, withdrawal liability arises when an employer stops contributing to a multiemployer pension plan and is designed to "relieve the funding burden on remaining employers by having the withdrawing employer pay its proportionate share of the plan's unvested benefits." *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988). The MPPAA sets forth the statutory framework for the determination of whether an employer has withdrawn and for the collection of withdrawal liability payments. Pursuant to that framework, an employer withdraws from a plan when it permanently ceases to have operations covered by a CBA or permanently ceases to have obligations to contribute to the plan. *See* 29 U.S.C. §1383(a). Upon withdrawal, the MPPAA requires a pension fund to send a notice and demand for payment for an employer's withdrawal liability "as soon as practicable" after the employer's complete withdrawal. *Id.* § 1399(b)(1).

"Payments are set at a level that approximates the periodic contributions the employer had made before withdrawing from the plan." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 197 (1997) (citing 29 U.S.C. § 1399(c)(1)(C)). "The statute limits the employer's obligation to make these payments to 20 years, even if it would take more than 20 payments for the employer to pay its full withdrawal liability." *Trs. of Local 138*, 692 F.3d at 130; *see also Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 419 (1995) (noting that "the statute forgives all debt outstanding after 20 years"). In the event that the employer fails to make any scheduled payment, it has sixty days to cure the nonpayment. *Id.* § 1399(c)(2). If the employer fails to do so, the pension fund may declare the

10

employer in default, accelerate the payments and demand payment of the entire unpaid amount of the withdrawal liability. *Id.* § 1399(c)(5).

Once an employer receives a notice and demand for payment from a pension fund, the employer may dispute the amount of the withdrawal liability or assert defenses to its liability. *Id.* § 1399(b)(2)(A). Where a dispute exists, either party may initiate arbitration within specified time periods. *Id.* § 1401. If the employer fails to initiate arbitration, it waives both its right to dispute the amount of its liability and its right to assert defenses. *Id.* § 1401(b)(1). Thereafter, the pension fund may initiate an action in state or federal court to collect the unpaid withdrawal liability. *Id.* § 1451(c).

Where the trustees seek withdrawal liability payments, it must "show only that it complied with statutory procedural requirements." *See Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc.*, No. 03 Civ. 4530, 2004 U.S. Dist. LEXIS 418, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004); *Bowers v. Transportes Navieros Ecuadorianos (Transnave)*, 719 F. Supp. 166, 172 (S.D.N.Y. 1989). Thus, "[t]he plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." *Steve Petix Clothier, Inc.*, 2004 U.S. Dist. LEXIS 418, 2004 WL 67480, at *2; *Ret. Plan of Nat. Ret. Fund v. Lackmann Culinary Servs., Inc.*, No. 7:10-CV-06316, 2011 U.S. Dist. LEXIS 83458, 2011 WL 3366354, at *3 (S.D.N.Y. July 29, 2011). As described above, Plaintiffs here have done so.

11

Plaintiffs request payment of withdrawal liability in the amount of $173,156, as set forth in Exhibit 10 to the D'Ulisse Declaration. Since Defendant failed to timely request arbitration, its ability to contest the amount of withdrawal liability due and owning is foreclosed. *See Bakery & Confectionary Union & Indus. Pension Fund & Bd. of Trs. v. Mt. Rose Ravioli & Macaroni Co, Inc.*, No. CV09-3068 (ADS) (WDW), 2011 U.S. Dist. LEXIS 142059, 2011 WL 6130975, at *3(E.D.N.Y. Nov. 10, 2011)("Where a defendant does not initiate arbitration, it waives its right to arbitration and its right to assert any defenses in an action seeking withdrawal liability")(internal quotation omitted); *Trustees of Local 531 Pension Fund v. Flexwrap Corp.*, 818 F. Supp. 2d 585, 590 (E.D.N.Y. 2011)("[B]ecause [defendant] did not demand arbitration, [it] is barred from challenging Plaintiffs' calculation of the amount of unpaid withdrawal liability"). Accordingly, the undersigned recommends that Plaintiffs be awarded withdrawal liability in the amount of $173,156.00.

### C.     Damages

#### 1.     Payroll Audit

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant. The Trust Agreement does likewise. Plaintiffs request unpaid contributions in the combined amount of $1,413.00 consisting of $261.00 from the 2013 Audit and $1,152.00 from the 2014 Audit. In support of Plaintiffs' request for unpaid contributions, Plaintiffs submit the Final Audit report for the period July 1, 2012 to June 30, 2013 and the Final Audit report for the period July 1, 2013 to June 30, 2014, attached as Exhibits 5 and 7 to the D'Ulisse Declaration. These documents reflect that $1,413.00 in unpaid contributions are due

12

and owing with respect to the 2013 and 2014 Audits. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $1,413.00 in delinquent contributions.

ERISA Section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest on unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2). Here, the CBA provides for interest to be charged on delinquent contributions at the rate of eighteen percent (18%) per year from the date of each delinquent contribution. Plaintiffs are seeking interest owed to the Pension Fund for the 2013 Audit as of August 17, 2017, of $219.65. Pl.'s 56.1 Stmt. ¶ 49. Interest continues to accrue on the amounts owed at the rate of $3.92 per month. D"Ulisse Dec. Exh. 16. With respect to the 2014 Audit, applying an 18% interest rate to the amounts found owed from the date each delinquent contribution Plaintiffs seek interest on unpaid contributions pursuant to the 2014 Audit as of August 17, 2017, of $704.63. Pl.'s 56.1 Stmt. ¶ 51. The Court finds these interest calculations to be accurate. Accordingly, the undersigned recommends that Plaintiffs be awarded the interest requested.

ERISA section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(c) and the CBA allow for an award of liquidated damages equal to the greater of interest on unpaid contributions or liquidated damages provided for in the plan equal to the greater of applicable interest owed for the delinquent contributions and 20% of the unpaid contributions. Pl.'s 56.1 Stmt. ¶ 18. With respect to the 2013 Audit, Plaintiffs are seeking $219.65, which is the interest on the unpaid contributions (20% of the unpaid contribution was the lesser amount of $52.20). Pl.'s 56.1 Stmt. ¶ 50. With respect to the 2014 Audit, Plaintiffs are seeking $704.63, which is the interest on the

13

unpaid contributions (20% of the unpaid contribution was the lesser amount of $230.40). Pl.'s 56.1 Stmt. ¶ 52. Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded $924.28 in liquidated damages on unpaid contributions.

### 2. Withdrawal Liability

ERISA provides that in any action to compel payment of withdrawal liability, "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b). Thus, in addition to the amount of withdrawal liability due and owing, Plaintiffs are entitled to damages consisting of interest, liquidated damages and attorneys' fees and costs. *Id.* § 1132(g)(2)(B).[1]

29 U.S.C. § 1132(g)(2) allows an award of interest at the rate provided by the relevant plan, as does the regulation applicable to withdrawal liability. *See Board of Trustees of UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325, 2009 WL 982424, at *5 (E.D.N.Y. Apr. 10, 2009). When there is a default on the payment of withdrawal liability, a plan sponsor may be entitled to accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. *Daniello v. PML Furniture Group of N.J. Ltd.*, No. 06-CV-5261, 2009 U.S. Dist. LEXIS 114931, 2009 WL 4722650, at *5 (E.D.N.Y. Dec. 6, 2009). The CBA does not set an interest rate for withdrawal liability, however, the Delinquency Policy, adopted by the Trustees pursuant to the Trust Agreement states that amounts not paid on the due date shall accrue interest from the Due Date until the date payment is received at the rate of the Pension's Funds' custodial bank's prime rate plus 2% per annum. Pl.'s 56.1 Stmt. ¶¶ 4-6.

---

[1] As discussed above, Plaintiffs have reserved the right to seek attorneys' fees in the event the motion for summary judgment is granted.

14

Plaintiffs calculated the interest due on unpaid withdrawal liability of $173,156.00 from August 9, 2015 (the date when the first monthly payment of withdrawal liability became due) through and including August 22, 2017, which according to Plaintiffs amounts to $19,949.01. Plaintiffs used a rate of 5.25% from August 9 through December 31, 2015, a rate of 5.5% from January 1 through December 31, 2016 and a rate of 5.75 from January 1 through August 2017. The Court agrees with Plaintiffs' calculation. Accordingly, the Court recommends that Plaintiffs be awarded interest in the amount of $19,949.01.

29 U.S.C. § 1132(g)(2)(C), and the Delinquency Policy, also allow for liquidated damages in an amount equal to the greater of interest on the unpaid contributions or liquidated damages in the amount of 20% of the unpaid contributions. Here, 20% of the unpaid contributions of $173,156.00 amounts to $34,631.20, which exceeds interest on the unpaid contributions. Accordingly, the undersigned recommends that liquidated damages of $34,631.20 be awarded.

For the reasons set forth above, the Court respectfully recommends to Judge Spatt that summary judgment be granted and Plaintiffs be awarded:

$173,156.00 in withdrawal liability;
$1,413.00 in delinquent contributions;
$704.63 in accrued interest on the delinquent contributions;
$924.28 in liquidated damages on the delinquent contributions;
$19,949.01 in interest on withdrawal liability; and
$34,631.20 in liquidated damages on the withdrawal liability.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      January 15, 2019

                                                                      /s/
                                            ARLENE R. LINDSAY
                                            United States Magistrate Judge